UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SEGUNDA M. NARVAEZ,

    Plaintiff,

v.                                                                    Case No. 8:23-cv-2195-TPB-NHA

FLORIDA HEALTH SCIENCES
CENTER d/b/a TAMPA GENERAL
HOSPITAL,

    Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on "Defendant's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law," filed on December 1, 2023. (Doc. 14). On December 15, 2023, Plaintiff Segunda M. Narvaez filed a response in opposition to the motion. (Doc. 15). On December 20, 2023, Plaintiff filed a notice of supplemental authority. (Doc. 16). After reviewing the motion, response, supplemental authority, court file, and the record, the Court finds as follows:

**Background**[1]

Plaintiff Segunda M. Narvaez is a 59-year old Hispanic female who claims to suffer from an unnamed disability that causes sudden, debilitating attacks in the

---

[1] The Court accepts as true the facts alleged in Plaintiff's complaint for purposes of ruling on the pending motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). The Court is not required to accept as true any legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

form of nausea, dizziness, tremors, foggy thoughts, impaired vision, and tachycardia.[2] She began working as a registered nurse with Defendant Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital on July 16, 2006. In late 2018, she began working under the supervision of Michelle Summer. Plaintiff alleges that Ms. Summer began "harassing" her during almost every single one of her shifts, beginning in 2019.

On May 6, 2021, Plaintiff was assigned to work in an emergency room hold unit. During her shift, she began to experience the complained symptoms. When she told her employer that she was scheduled to have breast implant removal surgery on May 14, 2021, Plaintiff was placed on leave to prepare herself for the surgery. She returned to work on June 16, 2021, with light duty restrictions that she alleges were ignored by her supervisor.

On August 4, 2021, during her lunch break, Plaintiff again experienced symptoms including nausea, dizziness, tremors, foggy thoughts, impaired vision, and tachycardia. Plaintiff was told that if she left her shift, she would not be able to work her next shifts, and that she would need a recommendation from a primary care physician to be cleared to return to work.

On August 24, 2021, Plaintiff met with Defendant to relay her desire to return to work with an accommodation of a maximum eight-hour workday. Instead of providing the requested accommodation, Defendant approved unpaid FMLA leave

---

[2] Plaintiff explains that she had applied for and received intermittent FMLA leave for her severe disability.

until March 5, 2022.  During her "forced leave," Plaintiff applied for other positions with Defendant but did not receive any responses to her applications.

In October 2022, Defendant allowed Plaintiff to return to work.  It appears, however, that Plaintiff was terminated shortly after her return as part of a separate decision.[3]

On May 19, 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations against Defendant alleging, among other things, disability discrimination and retaliation and national origin discrimination.  On July 27, 2023, the EEOC issued Plaintiff a right to sue letter.

On September 27, 2023, Plaintiff filed the instant lawsuit, asserting seven claims for relief: disability discrimination under the Americans with Disabilities Act ("ADA") (Count I), Title VII national origin discrimination (Count II), ADA retaliation (Count III), retaliation under the Family and Medical Leave Act ("FMLA") (Count IV), disability discrimination under the Florida Civil Rights Act ("FCRA") (Count V), FCRA national origin discrimination (Count VI), and FCRA retaliation (Count VII).

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  While Rule 8(a) does not demand "detailed factual

---

[3] This fact is not alleged in the complaint and is instead referenced in Plaintiff's response in opposition to the motion to dismiss.

allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

## Analysis

Defendant moves to dismiss several counts of the complaint, arguing that Plaintiff has failed to sufficiently allege disability discrimination and retaliation claims, and because she has failed to exhaust her administrative remedies as to her FCRA claims.

### *Disability Discrimination Claims (Counts I and V)*

Defendant seeks dismissal of Plaintiff's disability discrimination claims in Counts I and V. The ADA prohibits an employer from "discriminat[ing] against a

qualified individual on the basis of disability in regard to job applications, procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. §12112(a). Similarly, the FCRA prohibits an employer from discriminating against an employee because of her disability. § 760.10, *F.S.* Because the FCRA is modeled on the ADA, FCRA disability discrimination claims are analyzed using the ADA framework. *Holly v. Clairson Industries, L.L.C.,* 492 F.3d 1247, 1255 (11th Cir. 2007) (citing *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1224 n.2 (11th Cir. 2005)).

To state a prima facie claim of disability discrimination under the ADA and FCRA, a plaintiff must show that she (1) is disabled; (2) is a qualified individual; and (3) was discriminated against because of her disability. *Id.* (citing *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000)). Although a plaintiff need not plead a prima facie case to survive a motion to dismiss, she must allege sufficient facts to plausibly suggest intentional discrimination. *See, e.g., Booth v. City of Roswell*, 754 F. App'x 834, 836-37 (11th Cir. 2018).

Defendant first argues that Plaintiff's discrimination claims should be dismissed because Plaintiff has failed to adequately state any hostile work environment claims. The complaint is not a model of clarity. Based on the titles of her counts, it appears that Plaintiff advances direct disability discrimination claims (ie: that she suffered one or more adverse employment actions based on her disability). But in the body of these counts, she appears to mix claims for disparate treatment and hostile work environment. Then, in her response in opposition, she

appears to reference a failure to accommodate as a basis for her disability discrimination claims. This improper mixing of claims makes it difficult for Defendant to respond to the allegations and for the Court to adjudicate the claims. *See Palmer v. Albertson's LLC*, 418 F. App'x 885, 889 (11th Cir. 2011) (holding that district court did not err in declining to consider hostile work environment claim when it was not asserted in a separate count so that the defendant could discern the claims and frame a responsive pleading).

In addition, some of the allegations are vague or possibly irrelevant, again making it difficult to frame a response and adjudicate the case. For instance, Plaintiff alleges that her supervisor, Michelle Summer began "harassing" her during her shifts. However, "harassment" is a legal term of art in some of these potential claims, and Plaintiff does not factually explain any of the alleged harassing conduct that Ms. Summer engaged in. As another example, Plaintiff makes several references to her breast implant removal surgery – so many references that it seems like Defendant may believe that Plaintiff is claiming that her disability is related to this surgery rather than suffering from an unnamed disability that "causes sudden, debilitating attacks in the form of nausea, dizziness, tremors, foggy thoughts, impaired vision and tachycardia."

Consequently, the Court will grant the motion to dismiss as to Plaintiff's disability discrimination claims and grant leave to amend. In any amended complaint, Plaintiff should separate out in different claims her theories of disability

discrimination.[4]  She should also clarify the nature of her disability and whether it is related to her breast implant removal surgery or not.

*Retaliation Claims (Counts III and VII)*

Defendant seeks dismissal of Plaintiff's retaliation claims in Counts III and VII for failure to state a claim.  To state a retaliation claim under the ADA or the FCRA, a plaintiff must allege and prove: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) that there is a causal connection between the protected conduct and adverse action.  *Davis v. Orange County*, No. 6:22-cv-2222-PGB-EJK, 2023 WL 4743586, at *6 (M.D. Fla. July 25, 2023) (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998)).

Defendant argues that Plaintiff claims she was retaliated against for requesting an accommodation by having her request for accommodation denied. The denial of an accommodation request cannot constitute an adverse employment action for purposes of a retaliation claim based on that accommodation request.  *See Fails v. Board of Trustees University of West Florida*, No. 3:22cv7026-TKW-HTC, 2023 WL 5666438, at *10 (N.D. Fla. Sept. 1, 2023) (explaining that the denial of benefits cannot constitute retaliation for requesting those benefits and noting that

---

[4] The Court notes that the Eleventh Circuit has not recognized an ADA hostile work environment claim.  *See Menzie v. Ann Taylor Retail, Inc.*, 549 F. App'x 891, 896 n.9 (11th Cir. 2013) ("We have never held in a published opinion that a hostile work environment claim is available under the ADA.  We do not decide that issue today because [the plaintiff] never asserted such a claim.").  Even if such a claim were cognizable, Plaintiff would need to allege more than she has here to state a claim, such as facts to show that the alleged harassment was severe and pervasive so as to alter the terms of her employment.  *See, e.g., Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275-76 (11th Cir. 2002).

"a failure to provide reasonable accommodations under the ADA is a direct discrimination claim, not a retaliation claim.").

The issue here appears to be in the wording of the complaint. Plaintiff alleges that "Defendant subjected Plaintiff to adverse employment actions in retaliation for requesting reasonable accommodations according to the restrictions outlined by her doctor *by refusing to assist Plaintiff in returning to work* after she got a medical release." (Doc. 1-1 at ¶¶ 74, 128) (emphasis added). But what Plaintiff means by "refusing to assist Plaintiff in returning to work" is vague and ambiguous here. If Plaintiff intends to allege that the refusal to assist her consisted of refusing to grant her accommodation request and permit her to work 8-hour days, the defense position is well-taken. But if Plaintiff instead intends to assert that the refusal to assist consisted of placing her on unpaid leave for requesting an 8-hour workday accommodation, her placement on unpaid leave could constitute an adverse employment action that is separate and distinct from a refusal to accommodate. *See Equal Employment Opportunity Commission v. Army Sustainment, LLC,* No. 1:20-cv-234-RAH-CWB, 2023 WL 6276341, at *9 (M.D. Ala. Sept. 26, 2023) ("It is well established that unpaid leave can constitute an adverse employment action as it directly impacts an employee's compensation."); *Kinsey v. City of Jacksonville*, No. 3:01-cv-785-J-32MCR, 2005 WL 3307211, at *9 (M.D. Fla. Dec. 6, 2005) (finding that the plaintiff established prima facie case of retaliation with respect to being required to take unpaid leave).

"A plaintiff cannot carry [her] burden to prove a retaliation claim if [her] argument is too vague to even analyze." *Fails*, 2023 WL 5666438, at *10 (citing *A.L.*

*v. Jackson Cnty. Sch. Bd.*, 635 F. App'x 774, 787 (11th Cir. 2015)). Because the complaint is ambiguous, the Court will grant the motion to dismiss and permit leave to amend so that Plaintiff may clarify the alleged adverse employment action(s) if she wishes to pursue any retaliation claims against her former employer.

***Exhaustion of Remedies (Counts V, VI, and VII)***

Defendant seeks dismissal of Plaintiff's FCRA claims in Counts V, VI, and VII based on a failure to exhaust administrative remedies. Defendant argues that because the EEOC charge referenced only federal statutes and did not make any reference to state law violations, Plaintiff failed to exhaust her administrative remedies under the FCRA. In support of its position, Defendant cites to a case from Florida's Fourth District Court of Appeal, *Belony v. North Broward Hospital District*, --- So.3d ---, 2023 WL 7172299 (Fla. 4th DCA Nov. 1, 2023). In *Belony*, the Fourth District Court of Appeal concluded that the trial court lacked subject matter jurisdiction because the plaintiff failed to exhaust his administrative remedies under the FCRA where his EEOC discrimination charge only alleged a violation of Title VII and did not refer to any state law violation. *Id.* at *2.

Plaintiff provided a notice of supplemental authority to highlight *Ramos v. Steak N Shake, Inc.*, --- So.3d ---, 2023 WL 8791666 (Fla. 2d DCA Dec. 20, 2023), a recent opinion from Florida's Second District Court of Appeal. In *Ramos*, the Second District Court of Appeal reached the opposite conclusion and certified conflict with the Fourth District Court of Appeal's *Belony* opinion. *Id.* at *3-4.

Due to the circuit conflict and certification to the Florida Supreme Court, the Court will deny the motion without prejudice as to this argument, which may be

raised at a later stage of the proceedings. Perhaps by that time, the Florida Supreme Court will have provided a definitive answer on this important issue of state law.[5] If not, the Court will still be in a better position to analyze how the Florida Supreme Court may decide the issue at that time.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1) "Defendant's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law" (Doc. 14) is hereby **GRANTED** to the extent that Counts I, III, V, and VII of Plaintiff's complaint are **DISMISSED WITHOUT PREJUDICE**, with leave to amend.

2) Plaintiff is directed to file an amended complaint on or before January 30, 2024. Failure to file an amended complaint as directed will result in this Order becoming a final judgment. *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719-20 (11th Cir. 2020).

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 16th day of January, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

---

[5] "[A]bsent a decision from the state supreme court on an issue of state law, [a federal court] is bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently." *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002).